## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| ANDRA "ANA" CHERI ROSE, *et al.*, | * | |
| | * | |
| **Plaintiffs** | * | |
| | * | Civ. No. MJM-25-521 |
| v. | * | |
| | * | |
| UNPLUGGED SPORT BAR AND | * | |
| RESTAURANT INC, et al., | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Twenty-one professional models brought this civil action in February 2025 arising from advertisements allegedly posted on social media by defendants Unplugged Sport Bar and Restaurant Inc and Maria Marcela Peredo Cespedes (collectively, "Defendants") in which Plaintiffs' images were used with their consent or remuneration. *See* ECF 1 (Complaint). This matter is before the Court on Defendants' Motion for Partial Dismissal. ECF 6. The motion is fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6 (D. Md. 2025). For reasons explained herein, the motion is granted in part and denied in part.

## I.   BACKGROUND

### A.  Procedural Background

A group of 21 plaintiffs, including Andra "Ana" Cheri Rose, Jessica Hinton, Lina Posada, Alana Marie Souza, Paola Cañas, Brenda Geiger, Mariana Davalos, Rosa Acosta, Mercedes Terrell, Marketa Lim, Jessica Burciaga, Claudia Sampedro, and Tiffany Gray, (collectively,

1

"Plaintiffs") filed their Complaint on February 21, 2025. ECF 1. The Complaint attaches numerous exhibits consisting of advertisements for social events, ECF 1-1 through 1-13, ECF 2-1 through 2-20, and asserts nine causes of action against Defendants: false association under the Lanham Act (Count I); false advertising under the Lanham Act (Count II); right of privacy (Count III); right to publicity (Count IV); violation of Maryland Consumer Protection Act (Count V); defamation (Count VI); negligence and respondeat superior (Count VII); unjust enrichment (Count VIII); and quantum meruit (Count IX). *See* Compl. On June 6, 2025, Defendants filed a Partial Answer, ECF 7, and a Motion for Partial Dismissal under Federal Rule of Civil Procedure 12(b)(6), ECF 6, attaching a memorandum of law, ECF 6-1. Plaintiffs filed a response in partial opposition to Defendants' motion, withdrawing Counts IV, V, VII, VIII, and IX, while arguing that the remaining causes of action should not be dismissed. ECF 8. Defendants filed a reply in support of dismissing Counts I, II, III, and VI. ECF 9.

###   B.  Factual Background[1]

Plaintiffs are 21 professional models who reside all over the country. *See* Compl. ¶¶ 11–31. Defendant Unplugged Sport Bar and Restaurant Inc. ("Unplugged") is a restaurant and nightclub operating in Wheaton, Maryland. *See id.* ¶¶ 1, 32 Defendant Maria Marcela Peredo Cespedes is the CEO of Unplugged and controls its advertising. *See id.* ¶ 34.

Each Plaintiff earns her livelihood modeling and licensing her images to individuals, magazines, and other companies for the purpose of advertising products and services. *See id.* ¶ 35. They assert that, in developing and maintaining their professional brands, they are selective about the companies and products with which they associate. *Id.* ¶ 36.

---

[1] The following facts are drawn from allegations in the Complaint (ECF 1).

Defendants operate Unplugged, where they sell food and alcohol in a sexually charged environment. *Id.* ¶ 105. Defendants own and control Unplugged's social media accounts, including Facebook, Twitter, and Instagram, and use those accounts to promote the nightclub for their commercial and financial benefit. *Id.* ¶¶ 106–08.

Plaintiffs allege that Defendants used, advertised, created, printed, and distributed Plaintiffs' images on Unplugged's promotional materials and social media to create the false impression that Plaintiffs worked at, endorsed, or were otherwise affiliated with Unplugged. *Id.* ¶ 109. For example, Plaintiff Andra "Ana" Cheri Rose has worked with companies such as Monster Energy, Maxim, and Playboy. *Id.* ¶ 42. Rose currently has over 12.5 million followers on Instagram, over 31,300 followers on Twitter, and over 105,000 followers on Facebook. *Id.* Rose, who has never had any business relationship with Defendants, is depicted in the photo in Exhibit A to the Complaint to promote Unplugged on its Facebook and Instagram pages. *See id.* ¶¶ 43–44; ECF 1-4 (Ex. A). The image makes it "appear that [Rose] was either an employee working at Unplugged, that she endorsed Unplugged, or that she was otherwise associated or affiliated with Unplugged."[2]

According to the Complaint, Defendants used Plaintiffs' images to obtain financial and promotional benefits, including increased revenue, publicity, and notoriety. *Id.* ¶ 110. Defendants knew Plaintiffs had never worked for, endorsed, or been affiliated with Unplugged. *Id.* ¶ 111. The use of Plaintiffs' images occurred without their knowledge or consent, and Plaintiffs were never compensated or otherwise benefited from such use. *Id.* ¶¶ 112–14.

---

[2] The image appears to be a poster promoting Unplugged's Urban and Latin Night Spring Break Party. Rose is featured in the middle of the image wearing a white bikini top and short skirt. The poster also provides information such as how to reserve a table, Unplugged's address, and DJs that presumably performed at Unplugged's event.

The Complaint further describes standard practices in the modeling industry, alleging that commercial use of a model's image typically involves negotiation through the model's agency and consideration of factors such as the model's reputation and demand, the scope and location of the shoot, the nature of the intended "usage," and the duration or "term" of the license. *Id.* ¶¶ 115–16. Plaintiffs assert that most image licenses are limited to one-, two-, or three-year terms and are rarely, if ever, granted for a lifetime. *Id.* ¶ 117.

Plaintiffs allege that Defendants were aware that their use of the images violated Plaintiffs' rights and created a false impression of endorsement or affiliation. *Id.* ¶ 118. They contend that the unauthorized use deprived them of licensing income and caused reputational and career harm due to negative associations with Unplugged. *Id.* ¶¶ 119–20. Defendants never sought or obtained consent or permission to use the images and never paid Plaintiffs for their use in promotional materials or on social media. *Id.* ¶¶ 121–23. Plaintiffs assert that Defendants' conduct was undertaken with the intent to deprive Plaintiffs of control over the commercial use of their images. *Id.* ¶ 124.

## II.    STANDARD OF REVIEW

A civil complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts "accept the well-pled allegations of the complaint as true, ... constru[ing] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Nevertheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or ... 'naked

assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678

(alteration in original) (citation omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

## III.   ANALYSIS

### A.  Lanham Act Claims

In Counts I and II of the Complaint, Plaintiffs plead claims under the Lanham Act, 15

U.S.C. § 1125(a), which provides that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–(A) is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]"

15 U.S.C. § 1125(a)(1)(A)–(B).

The damages provision of the Lanham Act provides, in relevant part, that, for violations of

§ 1125(a), the plaintiff

> shall be entitled, [subject to exceptions and principles of equity] to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.… In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty."

15 U.S.C. § 1117(a). Thus, the Lanham Act permits a plaintiff "to recover either the defendant's

profits or its own damages, trebled." *PBM Prods., Inc. v. Mead Johnson & Co.*, 174 F. Supp. 2d

424, 429 (E.D. Va. 2001). Even when a court enhances damages, Congress specified in the statute that the award is compensatory, not punitive. *See* 15 U.S.C. § 1117(a) ("Such sum in either of the above circumstances shall constitute compensation and not a penalty."). Accordingly, it is "clear that the Lanham Act prohibits punitive damages." *PBM Prods*, 174 F. Supp. 2d at 429.

Defendants argue that Plaintiffs' "claim for punitive damages" under the Lanham Act should be dismissed because their Complaint "failed to articulate any 'actual malice[.]'" Def. Mem. at 25–26. Plaintiffs respond that there is "no authority mandating that a plaintiff prove 'actual malice' before she is entitled to treble damages under [the Lanham Act.]" Pl. Opp'n at 12.

Defendants' suggestion that Plaintiffs' Lanham Act claims must be dismissed because they do not allege "actual malice" conflates a standard for punitive damages with the elements of liability under the Act. Because the Lanham Act does not authorize punitive damages, a plaintiff need not plead actual malice as a prerequisite to stating a claim. Rather, liability turns on whether the defendant engaged in conduct prohibited by the statute—such as false or misleading representations in commercial advertising, as is alleged here. Accordingly, the absence of allegations of actual malice does not warrant dismissal of Plaintiffs' Lanham Act claims.

Defendants' motion to dismiss is denied as to Counts I and II.

### B.  Statutes of Limitations Applicable Remaining Tort Claims

Defendants argue that Maryland's statutes of limitations bars "some of Plaintiffs' tort claims." Def. Mem. at 19; *see also* Def. Reply at 2. Indeed, Plaintiffs' right-of-privacy claim in Count III[3] is subject to a three-year statute of limitations, Md. Code Ann., Cts. & Jud. Proc. § 5-

---

[3] Defendants characterize Count III of the Complaint as a claim for invasion of privacy—specifically, appropriation of another's name or likeness as set forth in Restatement (Second) of Torts § 652C, which Maryland recognizes. Def. Mem. at 5–6; *see also Lawrence v. A.S. Abell Co.*, 475 A.2d 448, 451 (Md. 1984). Defendants further state that they "do not seek dismissal of Count III at this time." Def. Mem. at 7. Plaintiffs, in their opposition, do not dispute Defendants' characterization of Count III. Accordingly, there is no present dispute as to the pleading sufficiency of Count III.

101, and their defamation claim in Count VI is subject to a one-year statute of limitations, Md. Code Ann. Cts. & Jud. § 5-105. Importantly, "[u]nder the discovery rule in Maryland, a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010), *aff'd*, 495 F. App'x 350 (4th Cir. 2012) (citing *Lumsden v. Design Tech Builders, Inc.*, 749 A.2d 796, 801 (Md. 2000)). Defendants argue, however, that the discovery rule "does not apply to publications publicly posted on the Internet" and, alternatively, cannot be invoked here because Plaintiffs have not pled facts demonstrating when they became aware of pictures that were posted outside the applicable limitations periods. Def. Mem. at 21.

Defendants' first argument is unpersuasive. As support, Defendants cite *Hoai Thanh v. Ngo*, Civ. No. PJM 14-448, 2016 WL 3958584, at *10 (D. Md. July 22, 2016), *aff'd sub nom. Hoai Thanh v. Hien T. Ngo*, 694 F. App'x 200 (4th Cir. 2017), for the proposition that "where 'articles were widely available online and could have been discovered immediately, the statute of limitations began to accrue on the date the articles were published.'" (quoting *Tani v. Washington Post*, Civ. No. PJM 08-1130, 2009 WL 8652384, *2 (D. Md. June 18, 2009), *aff'd*, 352 F. App'x 792 (4th Cir. 2009)). Relying on that language, Defendants assert that because Plaintiffs' images were publicly posted on Instagram and accessible online, "the discovery rule is not applicable and the tort causes of action accrue on the date of publication." ECF 6-1 at 22. Defendants overlook, however, that the *Hoai Thanh* court went on to clarify that the relevant inquiry was whether the defendant's publication on a website "should be considered mass media and 'widely available online,' such that [the plaintiff] reasonably should have known of its existence at the time it was posted." *Id.* at *11. There, at the summary judgment stage and after discovery, the court concluded that no genuine dispute existed because the allegedly tortious material was published by an "online

magazine" reaching "worldwide audiences," making it widely available and rendering the discovery rule inapplicable. *Id.*

This case is distinguishable. At the motion-to-dismiss stage, the Court must accept Plaintiffs' allegations as true and draw all reasonable inferences in their favor. Whether the Instagram posts at issue were so widely available that Plaintiffs reasonably should have discovered them upon publication presents a factual question ill-suited for resolution on the pleadings. Unlike in *Hoai Thanh*, the evidentiary record here has not been developed. Accordingly, *Hoai Thanh* does not support dismissal at this stage nor stand for a general proposition that the discovery rule "does not apply to publications publicly posted on the Internet." Def. Mem. at 21.

Defendants' second argument—that Plaintiffs' claims based on images posted more than three years before the filing of the Complaint should be dismissed because Plaintiffs failed to allege facts supporting application of the discovery rule—has some force. In *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007), the Fourth Circuit explained that, generally, a plaintiff need not plead facts in a complaint anticipating affirmative defenses, including a statute of limitations defense. The court noted, however, that this principle may not apply "in the unusual case where a claim is filed *clearly* beyond the applicable limitations period and the plaintiff seeks to forestall its dismissal by alleging the facts of discovery." *Id.* (emphasis in original). Defendants contend that this case presents such an "unusual case," arguing that it is apparent from the face of the Complaint that certain claims fall outside Maryland's one-year and three-year limitations period applicable to defamation and right-of-privacy claims, respectively. Def. Reply at 2. In support, Defendants analogize to *Hughes v. Opel*, Civ. No. JKB-23-1974, 2024 WL 1443329, at *1 (D. Md. Apr. 3, 2024), where the court rejected a plaintiff's reliance on the discovery rule. There, the allegedly defamatory statement was made more than one year before the complaint was filed, and the

complaint failed to "offer any details indicating that [the plaintiff] first saw the post within a year of filing this suit." *Id.* The court therefore dismissed the claim as time-barred. *Accord Shore v. Mayor & City Council of Baltimore City*, Civ. No. CCB-19-1341, 2020 WL 2848130, at *4 (D. Md. June 2, 2020) ("The plaintiffs have thus not alleged sufficient facts to warrant application of the discovery rule or the fraudulent concealment doctrine.").

Here, the Complaint was filed on February 21, 2025. In it, Plaintiffs identify images as the grounds for their defamation and right-of-privacy claims and attach as exhibits specific advertisements displaying publication dates that facially fall outside the applicable one-year and three-year limitations periods. Specifically, the following exhibits contain advertisements that fall outside both the three-year limitations period applicable to the right-of-privacy claims in Count III and the one-year limitations period applicable to the defamation claims in Count VI: Exhibit B (ECF 1-5) contains images of Hinton posted in 2016; Exhibit E (ECF 2-1) contains images of Posada posted in 2016; Exhibit F (ECF 2-2) contains images of Souza posted in 2016; Exhibit G (ECF 2-3) contains images of Canas posted in 2016; Exhibit I (ECF 2-5) contains images of Geiger posted in 2016; Exhibit J (ECF 2-6) contains images of Davalos posted in 2016 and 2021; Exhibit L (ECF 2-8) contains images of Acosta posted in 2016 and 2020; Exhibit M (ECF 2-9) contains images of Terrell posted in 2016; Exhibit N (ECF 2-10) contains images of Lim posted in 2017; Exhibit S (ECF 2-18) contains images of Burciaga posted in 2015; Exhibit T (ECF 2-19) contains images of Sampedro posted in 2018; and Exhibit U (ECF 2-20) contains images of Gray posted in 2016. Further, the following exhibits contain additional posts that fall outside the one-year limitations period applicable to the defamation claims in Count VI: Exhibit A contains images of Rose posted in 2023; Exhibit C contains images of Guzman posted in 2022; Exhibit E contains images of Posada posted in 2022; Exhibit G contains images of Canas posted in 2022; Exhibit H

contains images of Nabila posted in 2023; Exhibit J contains images of Davalos posted in 2022; Exhibit K contains images of Keller posted in 2023; Exhibit O contains images of Wood posted in 2023; Exhibit P contains images of Harper posted in 2022 and 2023; Exhibit Q contains images of Rao posted in 2023; and Exhibit R contains images of Yemane posted in 2023.

The Complaint does not provide facts to support sustaining Plaintiffs' facially untimely claims under the discovery rule. I note, however, that Plaintiffs request leave to amend should the Court identify deficiencies in their pleading. Pl. Opp'n at 13. In these circumstances, judicial economy and the pleading requirements of Rule 8(a) and Rule 12(b)(6) warrant dismissal of the facially untimely claims asserted in Counts III and VI while giving Plaintiffs an opportunity to amend their Complaint. Through amendment, Plaintiffs may clarify which of the facially untimely claims they contend are preserved by the discovery rule and set forth facts sufficient to support that contention.

### C. Defamation

Plaintiffs assert defamation claims in Count VI of their Complaint. Defendants argue that Count VI fails to state a claim for relief. First, Defendants argue that Plaintiffs have failed to allege facts sufficient to invoke the discovery rule and toll the one-year statute of limitations[4] for defamation claims in Maryland. Def. Mem. at 19. Defendants also argue that Plaintiffs fail to state a plausible defamation claim. Specifically, Defendants contend that Plaintiffs' defamation *per se* theory fails because "there is nothing inherently defamatory about the pictures of these models" and their defamation *per quod* theory fails because they do not allege "sufficient extrinsic facts in order to establish the defamatory character of the words sued upon." Def. Reply at 4–5.

---

[4] *See* Md. Code Ann. Cts. & Jud. § 5-105.

Plaintiffs contend that they adequately allege both defamation *per se* and defamation *per quod.* They further assert that the *per se* claim is based on allegations that the advertisements "would tend to injure each Plaintiff in her trade, business, and profession as a professional model." Pl. Opp'n at 10 (citing Compl. ¶ 200). They assert that the *per quod* claim is based on allegations that each Plaintiff's forced and false affiliation with Unplugged would subject her to contempt, ridicule, and degradation. *Id.* at 10 (citing Compl. ¶¶ 191–202). Additionally, Plaintiffs argue that, at the motion to dismiss stage, Defendants are not in a position "to dispute Plaintiffs' allegation that their affiliation with a nightclub such as Unplugged would harm and devalue their career." *Id.* at 11.

For the reasons stated in Part III.B *supra*, Plaintiffs' defamation claims based on images posted before February 21, 2024, are time barred and shall be dismissed.

On the merits, Plaintiffs fail to state any plausible defamation claim in Count IV.

To establish a *prima facie* case of defamation in Maryland, a plaintiff must establish four elements: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff suffered harm." *Hosmane v. Seley-Radtke*, 132 A.3d 348, 354 (Md. App. Ct. 2016) (citing *Offen v. Brenner*, 935 A.2d 719, 723–24 (Md. 2007). The Appellate Court of Maryland has explained the substantive requirements of a defamatory statement as follows:

> A defamatory statement is one "which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person." *Batson v. Shiflett,* 325 Md. 684, 722–23, 602 A.2d 1191, 1210 (1992). A false statement is one that is not substantially correct. *Id.* at 726, 602 A.2d at 1212. [...] Whether a publication is defamatory is a question of law for the court.

*Lindenmuth v. McCreer*, 165 A.3d 544, 552 (Md. App. Ct. 2017) (quoting *Hosmane*, 132 A.3d at 354).

"[T]here are two types of defamatory statements: *per se* and *per quod*." *Iheakanwa v. Saks Fifth Ave., LLC*, Civ. No. GLS-21-2930, 2022 WL 3919673, at *4 (D. Md. Aug. 30, 2022) (citing *Metromedia, Inc. v. Hillman*, 400 A.2d 1117, 1123 (Md. 1979)). "A statement is defamatory *per se* when the hearer can 'impute the defamatory character,' from the words themselves and no further inference or context is necessary. *Id.* (quoting *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 441 (Md. 2009)). The injurious nature of the words is a "self-evident fact of common knowledge of which the court takes judicial notice," such that it does not need to be "pleaded or proved." *Id.* (quoting *M & S Furniture Sales Co. v. Edward J. De Bartolo Corp.*, 241 A.2d 126, 128 (Md. 1968)). By contrast, defamation *per quod* requires a plaintiff to allege "extrinsic facts" that establish the defamatory character of the words through context or innuendo. *Metromedia*, 400 A.2d at 1123. "Defamation per quod also requires allegations of special damages." *Clayton v. Fairnak*, Civ. No. JKB-18-2134, 2018 WL 6446440, at *2 (D. Md. Dec. 10, 2018) (citing *Metromedia*, 400 A.2d at 1119). "The root of the distinction [between defamation *per se* and *per quod*] lies in the need for extrinsic evidence[.]" *Burtnick v. Weinblatt*, No. 1074, Sept.term, 2018, 2019 WL 5305522, at *14 (Md. App. Ct. Oct. 21, 2019) (citing *M & S Furniture Sales Co. v. Edward J. De Bartolo Corp.*, 241 A.2d 126, 128 (Md. 1968)). And "[w]hether a statement is defamatory per se or per quod is a question of law." *Clayton*, 2018 WL 6446440, at *2 (citing *Shapiro v. Massengill*, 661 A.2d 202, 217 (Md. App. Ct. 1995)).

The Restatement (Second) of Torts offers

> guidance regarding the types of allegations that normally rise to the
> level of defamation per se, which include allegations of:
>
> (a) a criminal offense, as stated in § 571, or

(b) a loathsome disease, as stated in § 572, or

(c) matter incompatible with his business, trade, profession, or office, as stated in § 573, or

(d) serious sexual misconduct, as stated in § 574.

*Goldstein v. Hindle*, Civ. No. GLR-21-03124, 2024 WL 473736, at *3 (D. Md. Feb. 7, 2024) (quoting Restatement (Second) of Torts § 570 (1977)). Examples of statements Maryland courts have found to be defamatory *per se* include: a stadium vendor's assertion that an usher "is a thief," *Carter v. Aramark Sports & Ent. Servs., Inc.*, 835 A.2d 262, 278 (Md. App. Ct. 2003); a college president's statement that a professor was discharged for "poor performance," *Samuels v. Tschechtelin*, 763 A.2d 209, 245 (Md. App. Ct. 2000) (Hollander, J.); and a union agent's insinuation that a union member "was untrustworthy and not a fit person to perform the type of work in which he specialized," namely, installing safes, bank vaults, safe deposit boxes, and similar items, *Nistico v. Mosler Safe Co.*, 405 A.2d 340, 343 (Md. App. Ct. 1979). *See also Behram v. Adventist Health Care, Inc.*, No. 375, Sept. Term, 2022, 2023 WL 4011686, at *21 (Md. App. Ct. June 15, 2023) (citing *Carter*, *Samuels*, and *Nistico* as "classic examples" of defamation *per se*).

Here, Plaintiffs argue their defamation *per se* claims are based on advertisements that tend to "injure each Plaintiff in her trade, business, and profession as a professional model." Pl. Opp'n at 10. But the allegations in the Complaint, and the images attached as exhibits thereto, do not rise to the level of defamation *per se*. Plaintiffs assert that Defendants used their images to promote its nightclub and that such advertising is inconsistent with Plaintiffs' status as well-known models and beneath the caliber of work they typically accept. Even accepting those assertions as true, the advertisements do not, on their face, accuse Plaintiffs of criminal behavior, dishonesty, incompetence, serious sexual misconduct, or any characteristic incompatible with their profession.

13

Nor do they state or clearly imply that Plaintiffs lack the skill, professionalism, or integrity required of successful models. Put differently, the alleged misuse of Plaintiffs' images does not inherently communicate that Plaintiffs are unfit for modeling, have engaged in wrongdoing, or have otherwise compromised their professional standards. Any reputational harm to Plaintiffs arising from the advertisements depends on context—such as Plaintiffs' branding, market position, or contractual obligations—rather than arising facially from the advertisements themselves. Because defamation *per se* requires that both the defamatory meaning and its injurious effect be apparent on the face of the statement, without resort to additional facts, Plaintiffs' allegations fall short of stating a plausible *per se* claim.

Plaintiffs' *per quod* theory falls short too because relevant allegations in the Complaint are conclusory and do not identify special damages. Plaintiffs allege that

> Defendants' publication of Plaintiffs' image and likeness constitutes defamation under Maryland law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., working as an entertainer and/or endorsing Defendant's business which would subject each Plaintiffs [sic] to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiffs [sic] of confidence and friendly intercourse in society.

Compl. ¶ 199. Here, Plaintiffs merely recite the legal standard for defamation without alleging facts to support any defamatory meaning in, or interpretation of, Defendants' publications or any reasonable inference that the publications, in context, caused professional harm. Conclusory and formulaic assertions that the publications would subject Plaintiffs to contempt or disgrace are insufficient.

Plaintiffs' *per quod* theory also fails for lack of well-pleaded special damages. As Judge Bredar has explained,

14

> [d]efamation per quod requires plaintiffs to plead special damages—
> that is, to plead sufficient facts to show or infer "that [the] words . .
> . caused actual damage." *M & S Furniture Sales*, 241 A.2d at 128.
> Actual damages may include economic loss, as well as "impairment
> of reputation and standing in the community, personal humiliation,
> and mental anguish and suffering." *Jacron Sales Co. v. Sindorf*, 350
> A.2d 688, 692 (Md. 1976) (quoting *Gertz v. Robert Welch, Inc.*, 418
> U.S. 323, 350 (1974)). Damages based only on "speculation or
> conjecture are not recoverable," *Kleban v. Eghrari-Sabet*, 920 A.2d
> 606, 627 (Md. Ct. Spec. App. 2007), and, at the motion to dismiss
> stage, damages must be alleged at least with sufficient particularity
> to "put[ ] the defendant on notice of the manner, nature and extent
> of injury." *Wineholt v. Westinghouse Elec. Corp.*, 476 A.2d 217, 220
> (Md. Ct. Spec. App. 1984).

*Clayton*, 2018 WL 6446440, at *4.

Here, Plaintiffs do not identify any economic loss such as lost contracts, withdrawn offers, canceled bookings, diminished licensing fees, or other concrete pecuniary harm. Plaintiffs do allege that their careers "place a high degree of value on their good will and reputation" and that Defendants' use of their images caused each Plaintiff to suffer "harm to reputation." Compl. ¶¶ 36, 40; *see also id.* ¶ 120 ("In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Unplugged."). But these allegations amount to nothing more than "a recitation of the categories of harm that might be compensable as actual injury [and are] completely 'devoid of the further factual enhancement' required at the pleading stage." *Clayton*, 2018 WL 6446440, at *5 (quoting *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)) (cleaned up). The allegations in the Complaint do not suffice to plead special damages from any defamation *per quod*.

For all of the foregoing reasons, Plaintiff's defamation claims in Count VI must be dismissed.

## IV.    CONCLUSION

15

For reasons explained herein, Defendants' Motion for Partial Dismissal, ECF 6, is granted in part and denied in part. The motion is granted as to the defamation claims asserted in Count VI, as well as any right-of-privacy claims asserted in Count III based on advertisements posted before February 21, 2022. These claims are dismissed without prejudice. The claims asserted in Counts IV, V, VII, VIII, and IX are withdrawn and voluntarily dismissed without prejudice. Defendants' motion is denied as to the Lanham Act claims asserted in Counts I and II, as well as any right-of-privacy claims asserted in Count III based on advertisements posted after February 21, 2022. Plaintiffs are granted leave to amend the Complaint. A separate Order follows.

_3/27/26_
Date

_____/S/_____
Matthew J. Maddox
United States District Judge

16